UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| ROBERT NEWBERN and | ) | |
| PATRICIA NEWBERN, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     vs. | ) | Case No. 1:19 CV 86 ACL |
| | ) | |
| AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE COMPANY, S.I., | ) | |
| | ) | |
|     Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant American Family Mutual Insurance Company, S.I.'s ("American Family") Motion for Summary Judgment (Doc. 47) and Plaintiffs Robert Newbern and Patricia Newbern's ("the Newberns") Cross Motion for Summary Judgment (Doc. 49) in this insurance coverage dispute. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). For the following reasons, the Court will grant American Family's Motion for Summary Judgment and deny the Newberns' Motion for Summary Judgment.

**Background**

On May 28, 2019, American Family removed this action from the Circuit Court of Cape Girardeau, Missouri, based on diversity of citizenship. (Doc. 1.) In the Petition for Declaratory Judgment, Plaintiffs Robert Newbern and Patricia Newbern, husband and wife, seek a determination of their rights and obligations under policies of insurance that were issued to them by American Family. (Doc. 1-1.) Plaintiff Robert Newbern was involved in an automobile accident in which he sustained injuries and damages on May 20, 2018. Destiny Moore was the

1

operator of the vehicle that impacted Robert Newbern's vehicle, and was an uninsured motorist as defined by the four automobile insurance policies issued to the Newberns by American Family. Plaintiffs argue that Robert Newbern is allowed to stack the $100,000 policy limits for the uninsured motorist coverage in all four policies.  Plaintiffs therefore request that the Court enter a judgment declaring Plaintiffs are entitled to stack the coverage in the four polices and that the total amount of uninsured motorist coverage available to Plaintiffs is $400,000.

On April 10, 2020, American Family filed the instant Motion for Summary Judgment, arguing that it is entitled to judgment as a matter of law because American Family has paid the amounts owed under the unambiguous terms of the policies.  Specifically, American Family states that it has paid Plaintiffs $100,000 under the first policy, and then $25,000 under the next three policies, for a total of $175,000.  American Family disputes that it owes Plaintiffs the remaining balance of $225,000, due to application of  the "owned vehicle" exclusion, which limits the applicable stacked coverage on the three polices to $25,000 each.

In its cross Motion for Summary Judgment, Plaintiffs argue that the "owned vehicle" exclusion does not apply in this case because the term "own" as used in the relevant policies is ambiguous.  They contend that they are entitled to judgment as a matter of law in their favor and American Family's Motion for Summary Judgment should be denied.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the moving party.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir.1988).

2

The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted).

Where the parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law. *See, e.g., Wermager v. Cormorant Township Bd.,* 716 F.2d 1211, 1214 (8th Cir. 1983) ("[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits.").

### Facts

As a threshold matter, Local Rule 4.01(E) imposes requirements concerning statements of uncontroverted material fact in connection with summary judgment motions:

> Every memorandum in support of a motion for summary judgment must be accompanied by a document titled Statement of Uncontroverted Material Facts, which must be separately filed using the filing event, "Statement of Uncontroverted Material Facts." The Statement of Uncontroverted Material Facts must set forth each relevant fact in a separately numbered paragraph stating how each fact is established by the record, with appropriate supporting citation( s). Every memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts, which must be separately filed using the filing event "Response to Statement of Material Facts." The Response must set forth each relevant fact as to which the party contends a genuine issue exists. The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts. All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

American Family filed a Statement of Uncontroverted Material Facts, setting forth facts in separately numbered paragraphs with supporting citations to the record.  (Doc. 47-1.)  The Newberns then filed their "Cross-Motion for Summary Judgment of Plaintiffs and Opposition to Defendant's Motion for Summary Judgment," (Doc. 49), along with a "Memorandum of Points and Authorities in Support of Cross-Motion for Summary Judgment, and in Opposition to Defendant's Motion for Summary Judgment" (Doc. 50).  American Family filed a Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment (Doc. 51) and a Response to Plaintiffs' Cross-Motion for Summary Judgment (Doc. 52).  Two days later, American Family provided the Court with recently decided supplemental authority in support of its Motion.  (Doc. 53.)  Finally, Plaintiffs filed a Reply to Defendant's Response to Plaintiffs' Motion for Summary Judgment.  (Doc. 54.)

As American Family points out, the Newberns did not file a Response to Statement of Material Facts admitting or denying American Family's numbered facts pursuant to Rule 4.01(E).  The Newberns acknowledged that they did not follow the local rule, but state that, "[i]nstead, Plaintiffs incorporated their Statement of Uncontroverted Material Facts in their memorandum of points and authorities."  (Doc. 54 at p. 4.)  They refer to a section within their "Memorandum of Points and Authorities" titled "Statement of Undisputed Facts," which does not set out facts in separately numbered paragraphs and only occasionally cites to the record in support of its facts.  (Doc. 50 at p. 4-6.)

The "concision and specificity required" by rules such as Local Rule 4.01(E) "seek to aid the district court in passing upon a motion for summary judgment, reflecting the aphorism that it is the parties who know the case better than the judge." *Libel v. Adventure Lands of America, Inc.,* 482 F.3d 1028, 1032 (8th Cir. 2007) (cited case omitted).  This type of local rule "exists to prevent a district court from engaging in the proverbial search for a needle in the haystack. Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense." *Id.* (internal quotation and citation omitted).  Thus, American Family's Statement of Uncontroverted Material Facts are deemed admitted under Local Rule 4.01(E).

American Family next argues that the Newberns' Cross Motion for Summary Judgment suffers from the same procedural defect, as it does not contain a Statement of Uncontroverted Material Facts in separately numbered paragraphs as required by Local Rule 4.01(E).  American Family further argues that the Cross Motion is procedurally deficient because it asserts the Newberns are entitled to monetary damages, when the Complaint seeks only declaratory judgment relief.

The Court need not address the deficiencies of the Newberns' Cross Motion, as the only issue raised in both motions for summary judgment is whether the owned vehicle exclusion applies.  There is no genuine dispute of material fact.

The facts are set out as follows:

American Family issued the following four policies of insurance applicable to Plaintiffs ("Policies"):

1.  Policy No. 2170-9637-04-75-FPPA-MO ("Policy A")

2.  Policy No. 2170-9637-02-69-FPPA-MO ("Policy B")

5

3.  Policy No. 2170-9637-05-78-FPPA-MO ("Policy C")

4.  Policy No. 2170-9637-03-72-FPPA-MO ("Policy D")

Robert Newbern was the owner identified on the title of the 2016 Chevrolet Corvette listed on the Declarations Page of Policy A on May 20, 2018.  He was also the owner registered with the Missouri Department of Motor Vehicles ("DMV") of the 2016 Chevrolet Corvette listed on the Declarations Page of Policy A.

Robert Newbern was the owner identified on the title of the 2012 Hyundai Elantra listed on the Declarations Page of Policy B on May 20, 2018, and was the owner registered with the DMV of the 2012 Hyundai Elantra.

Meahsha Newbern was the owner identified on the title of the 2015 Chevrolet Cruze listed on the Declarations Page of Policy C on May 20, 2018, and was the owner registered with the DMV of this vehicle.  Meahsha Newbern was a resident of Plaintiffs' household on May 20, 2018.  She lived at 61 Green Acres St., Cape Girardeau, Missouri.

Robert Newbern was the owner listed on the title of the 1999 GMC Sierra identified on the Declarations Page of Policy D on May 20, 2018, and was the owner registered with the DMV of this vehicle.

Each of the four Policies contain the following provisions, UNINSURED MOTORIST COVERAGE-MISSOURI providing:

B. ADDITIONAL DEFINITIONS

    1. The following definitions are added:

        a. **Insured person** or **Insured persons** means:

            (1) **you** or a **relative**.

\*\*\*

6

## D. EXCLUSIONS

1. **We** do not provide coverage for **bodily injury** sustained by any **insured person**:

> a. while **occupying**, or when struck by, a motor vehicle that is not insured for this coverage under this policy if it is owned by **you** or any resident of **your** household.

> \*\*\*

> If any uninsured motorist insurance law or financial responsibility law determines that any exclusion is unenforceable, **we** will provide only the minimum limits required by that law. If any other insurance provides coverage up to the minimum limits required, the provisions of this coverage remain unchanged.

## E. LIMITS OF LIABILITY

1. The limits of liability for this coverage as shown in the Declarations apply, subject to the following:
> a. the **bodily injury** liability limit for "each person" is the maximum for all damages sustained by all persons as the result of **bodily injury** to one person in any one occurrence, including but not limited to damages for care, loss of consortium, loss of services or death.
> b. subject to the **bodily injury** liability limits for "each person," the **bodily injury** liability limits for "each occurrence" is the maximum for **bodily injury** sustained by two or more persons in any one occurrence.

2. The limits of liability for this coverage are the most that we will pay regardless of the number of:
> a. **insured persons**;
> b. claims made; or
> c. vehicles involved in the accident.

3. The limits of liability of this coverage will be reduced by:
> a. payments made by or on behalf of the owner or operator of the **uninsured motor vehicle** or organization which may be legally liable.
> b. payments under the liability coverage of this policy.
> c. payments made or amount payable because of the **bodily injury** under any worker's compensation law, disability benefits law, the pension code, or any similar law, or any private disability insurance or benefits.

4. No **insured person** will be entitled to receive duplicate payments for the same elements of loss. Any amount **we** pay under this coverage to or for an **insured person** will be reduced by any payment made to that person under any other coverage of this policy.

5. However, in no event shall the amount **we** pay to the **insured person** be reduced below the Missouri Motor Vehicle Financial Responsibility Law minimum limit.

7

On May 20, 2018, Robert Newbern sustained bodily injuries in a two-car automobile accident that occurred in Perryville, Missouri.  Mr. Newbern was driving his 2016 Chevrolet Corvette.  On that date, each policy was in full force and effect, and Robert Newbern was an insured under each policy.   Destiny Moore was the operator of the vehicle that collided with Mr. Newbern's vehicle on May 20, 2018.  At the time of the accident, Destiny Moore operated an uninsured motor vehicle as defined by the Policies.

Mr. Newbern has satisfied all conditions precedent to American Family's obligation to pay the Uninsured Motorist ("UM") Coverage damages outlined in the Policies.  Mr. Newbern sought $100,000 under each of the four polices, for a total of $400,000.  Pursuant to Mr. Newbern's claim for UM coverage, American Family agreed to pay $100,000 under Policy A; $25,000 under Policy B; $25,000 under Policy C; and $25,000 under Policy D, for a total of $175,000.[1]  The Newberns agreed to accept the $175,000 offered by American Family but the parties further agreed that the Newberns would remain free to pursue the difference of $225,000. The Newberns executed a Limited Release of Claims Subject to Reservation of Specific Claims for the ability to dispute the collectability of the remaining $225,000.

---

[1]Missouri law requires uninsured motorist coverage in the "minimum amount of $25,000 per person/$50,000 per occurrence[.]"  *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 46 (Mo. banc 2009) (citing Mo. Rev. Stat. § 379.203); *see also* Missouri's "Motor Vehicle Financial Responsibility Law" §§ 303.030 *et seq.*

**Discussion**

The Newberns' sole contention is that the term "own" as used in the exclusionary clause is ambiguous and, therefore, must be construed so as to afford coverage.  As a result, they argue American Family must pay its full $100,000 UM limits with regard to Policies B, C, and D.

American Family argues that, under the unambiguous terms of the exclusionary clause, it is only obligated to pay the minimum limits established by Missouri's Motor Vehicle Financial Responsibility law as to Policies B, C, and D.  American Family contends that it owes $100,000 on the policy of the Corvette Mr. Newbern was driving (Policy A), and $25,000 on each of the other policies (Policies B, C, and D).  In support, American Family relies on the Missouri Supreme Court's decision in *Floyd-Tunnel v. Shelter Mutual Insurance Company*, 439 S.W.3d 215 (Mo. banc 2014).

Because this is a diversity case, the Court applies state substantive law and federal procedural law.  *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  The parties agree that Missouri law controls.  Accordingly, the Court must apply Missouri law as declared by the Supreme Court of Missouri and may not disregard decisions of the Missouri Court of Appeals.  *International Envtl. Mgmt., Inc. v. United Corp. Servs., Inc.*, 858 F.3d 1121, 1125 (8th Cir. 2017).

Under Missouri law, general rules of contract construction apply when interpreting an insurance policy.  *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007).  "The key is whether the contract language is ambiguous or unambiguous."  *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993).  "Absent an ambiguity, an insurance policy must be enforced according to its terms."  *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007).

9

In *Floyd-Tunnell*, the plaintiff claimed UM coverage for her husband's wrongful death under each of their three auto policies, but the insurer, applying an owned vehicle exclusion, limited coverage to the statutory minimum of $25,000 for the policies covering cars the husband was not driving when the accident occurred.  439 S.W.3d at 217.  Floyd sued Shelter seeking $100,000 of UM coverage under each policy, for a total of $300,000.  *Id.*  She argued that the owned vehicle exclusion did not apply to her because she was not in the car when the accident occurred.  *Id.*  In the alternative, she argued that the exclusion rendered the policies ambiguous because it limited coverage granted elsewhere in each policy.  *Id.*  Both parties moved for summary judgment.  *Id.*  The trial court ruled that the owned vehicle exclusion applied and was unambiguous, and granted Shelter's motion for summary judgment.  *Id.*  On transfer from the Court of Appeals, the Missouri Supreme Court affirmed the decision of the trial court.  *Id.*

The Supreme Court identified the issue as "whether the [owned vehicle] exclusion limits Shelter's liability under two of the policies to $25,000 per policy."  *Id.*  The Court concluded that the policies' plain language—"money owed to an insured for bodily injury ... sustained by that insured"—did not cover a claim for wrongful death damages.  Because plaintiff did not suffer bodily injury herself, "[t]he plain language of the policies denies her coverage for the damages she sustained as a result of her husband's death."  *Id.*  The Court noted that in cases in which the decedent and his or her statutory beneficiary are both insureds, "the legislature contemplated that the survivors of a person killed in an accident with an uninsured motorist would pursue a claim under the *decedent's* uninsured motorist coverage, rather than the survivor's policy."  *Id.* at 220 (internal citation omitted) (emphasis in original).  In Floyd's case, Shelter *did* provide coverage for Floyd's husband's death; "the only issue is the amount of coverage due."  *Id.*  As to this issue, the Court concluded that the "plain language of the [owned vehicle] exclusion limits

Shelter's liability to $25,000 when the damages are sustained while the insured is occupying a vehicle that is owned by the insured but is not the vehicle covered by the policy." *Id.* at 220-21. Because Floyd's husband died "while driving a vehicle he owned, coverage under the other two polices is limited by the [owned vehicle] exclusion." *Id.* at 221.

American Family has also submitted recently decided supplemental authority. The Missouri Court of Appeals decided *Johnson v. State Farm Mutual Automobile Insurance Company* on May 5, 2020. In that case, the Court of Appeals affirmed the trial court's grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm") upholding an owned vehicle UM exclusion clause under *Floyd-Tunnell*. SD 36368, 2020 WL 2124759, at *1 (Mo. Ct. App. May 5, 2020), *reh'g and/or transfer denied* (May 27, 2020). Tim Johnson, the insured, was involved in an automobile collision with an uninsured motorist and sustained bodily injuries. *Id.* At the time of the collision, Johnson was insured under three separate policies issued by State Farm. *Id* State Farm paid Johnson the UM policy limit of $100,000 under the policy of the vehicle involved in the collision, and paid him $25,000 in UM coverage under the other policies, citing an owned vehicle exclusion. *Id.* Johnson argued that the exclusion did not apply, was ambiguous, and conflicted with public policy and Missouri law. *Id.* The Court held that Johnson's arguments regarding ambiguity were effectively foreclosed by the Supreme Court of Missouri's decision in *Floyd-Tunnell*, which found no ambiguity in similar policy language. *Id.* at *3.

The Newberns argue that *Floyd-Tunnell* does not address the issue presented in this case: Whether the term "own" was ambiguous.[2] They note that this issue did not arise because the

---

[2]Although the Newberns did not file a response to American Family's supplemental authority, the Court notes that the *Johnson* Court also did not have occasion to address whether the term "own" was ambiguous.

insurance policy at issue in *Floyd-Tunnell* defined the term "own."  The Newberns contend that the Court should instead look to *Manner v. Schiermeier*, 393 S.W.3d 58 (Mo. 2013), in which the Missouri Supreme Court examined the issue presented in the instant case.

In *Manner,* Nathaniel Manner was involved in an accident while riding a motorcycle.  *Id.* at 60.  At the time of the accident, Manner was in the process of purchasing the motorcycle from his uncle.  *Id.* at 62.  Although *Manner* drove and insured the motorcycle, his uncle retained the title.  *Id.*  Manner sought coverage for his injuries under the underinsured motor vehicle coverage of policies insuring three *other* motor vehicles.  *Id.* at 60-61.  The insurer denied coverage, asserting that the motorcycle was a vehicle "owned" by Manner, which was not specifically insured under the policies in question.  *Id.* at 61.  The insurer argued that "possession of and an interest in the [motorcycle] sufficient to allow [Manner] to obtain an insurance policy on it" was sufficient to constitute "ownership," despite the fact that Manner "did not have title to the vehicle or other indicia or ownership of it."  *Id.* at 62.  The Supreme Court disagreed, holding that Manner's interest in the motorcycle did not unambiguously constitute "ownership" sufficient to trigger the policies' exclusions.  *Id.* at 62-63.

In reaching this decision, the *Manner* Court stated that the insurer could have defined "owned" but chose not to do so.  *Id.* at 62.  As a result, the Court viewed the term "in the meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Id.*  (internal citation omitted).  The Court continued:

> "Owner" is defined generally as "one that has the legal or rightful title whether the possessor or not."  *Webster's Third New International Dictionary* 1612 (1961). Additionally, "own" often is defined as "belonging to oneself or itself" or "to have or hold as property or appurtenance: have rightful title to, whether legal or natural: possess." *Id.* While the meaning of "owned" may vary in particular circumstances, case law similarly indicates that it usually involves establishing either title, *see, e.g., Case v. Universal Underwriters Insurance Company,* 534 S.W.2d 635 (Mo.App.1976) (title establishes a rebuttable presumption of

ownership), or the power to "voluntarily destroy, encumber, sell, or otherwise dispose" of the property, *see, e.g., Lightner v. Farmers Ins. Co., Inc.,* 789 S.W.2d 487 (Mo. banc 1990) (finding ownership on this basis). No case or dictionary has been identified that defines "ownership" and "possession of an insurable interest" as equivalences.

The insurers had the burden of showing that the term "owned" in the endorsement unambiguously included Nathaniel's situation. At best, the term is ambiguous as used in the policy, and any ambiguity will be interpreted in favor of the insured. *See Burns,* 303 S.W.3d at 509 (multiple meanings for a term suggest that the word itself is ambiguous if not defined). The insurer failed to meet its burden of showing that the owned-vehicle exclusion applied.

*Id.* at 62-63.

The *Manner* decision does not aid the Newberns.  Although the Policies in the instant case do not define "own," it does not automatically follow that they are ambiguous.  The policy in *Manner* was found to be ambiguous because the insurer failed to meet its burden of showing "that the term 'owned' in the endorsement *unambiguously included Nathaniel's situation*."  *Id.* at 63 (emphasis added).  Nathaniel's "situation," of course, was that he "did not have title to the vehicle or other indicia of ownership of it," his uncle still retained the title, and he "did not yet consider it his own."  *Id.* at 62.  No such circumstances are present in the instant case.

When the definition is left undefined in the policy—as has occurred here—the Missouri Supreme Court applies a "meaning that would ordinarily be understood by the layman who bought and paid for the policy."  *Id.*  Looking to the dictionary definition, *Manner* concluded the term "owner" involves, as a practical matter, "establishing either title ... or the power to voluntarily destroy, encumber, sell, or otherwise dispose of the property."  *Id.* at 63.  Similarly, in "Chapter 301 Registration and Licensing of Motor Vehicles," the legislature has made clear that an "owner" means anyone who "holds legal title to a vehicle."  § 310.010(43), RSMo.  *See also Naert v. GEICO Cas. Ins. Co.*, 4:19-CV-02339-SNLJ, 2020 WL 2130096, at *2 (E.D. Mo.

13

May 5, 2020) (applying Missouri law) (owned vehicle exclusion applied under underinsured motorist policy when insured was assigned title of vehicle from seller but never had it registered; "the fact of ownership is created by the delivery of a properly assigned certificate of title").

There is no dispute that, at the time of the accident, Robert Newbern held legal title to the Corvette. Nevertheless, the Newberns argue that the fact that Mr. Newbern is the registered owner does not mean he fits the definition of "owner" for the purpose of the Policies. They contend that the Corvette was titled in the name of Robert Newbern, Patricia Newbern, and the lienholder (JPMorgan Chase Bank). (Doc. 50 at p. 15.) Because the lienholder is also included on the title and Mr. Newbern was making payments to the lienholder at the time of the accident, they argue that the title is "uncertain as to ownership." *Id.*

The Newberns' argument is flawed in multiple respects. First, the Newberns fail to cite to evidence in the record demonstrating that the lienholder was included on the title or that Mr. Newbern was making payments to the lienholder at the time of the accident. These facts are not included in either parties' statement of facts. To the contrary, the Newberns admitted in their responses to American Family's Requests for Admission that Robert Newbern was the owner listed on the title of the 2016 Chevrolet Corvette and the owner registered with the DMV. (Doc. 47-6 at p. 3.) The Newberns denied that Patricia Newbern was an owner listed on the Corvette's title or the owner registered with the DMV. *Id.* at p. 4. Consequently, these facts are contradicted by the record.

Further, even assuming these facts are true, the Newberns cite no authority for the proposition that a legal title holder is divested of ownership if the vehicle is subject to a lien. In cases finding the term "own" was ambiguous, there were genuine factual issues regarding whether the term applied to the insured's unique situation. In none of these cases did the insured

hold legal title to the vehicle.  *See, e.g. Manner*, 393 S.W.3d  at 62 (insured was in the process of purchasing vehicle, but owner retained the title and insured had no other indicia of ownership of it); *United Fire & Cas. Co. v. Hall*, 536 S.W.3d 738, 741-42 (Mo. Ct. App. 2017) ("owned" found ambiguous within meaning of owned watercraft exclusion when boat titled in name of insured's trust and insured held title only in his capacity as trustee).

 "Courts may not unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity where none exists."  *Todd*, 223 S.W.3d at 163. Here, the Newberns are attempting to create an ambiguity when there is no genuine factual issue that Robert Newbern owned the Corvette.

The Court finds that American Family met its burden of establishing the term "owned" as used in the Policies unambiguously includes Mr. Newbern's situation.  Thus, the owned vehicle exclusion applies to limit the stacked coverage on the three policies to $25,000 each, resulting in a total of $175,000 available to Plaintiffs under the Policies.  The Court will issue a separate judgment consistent with this Memorandum and Order.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant American Family Mutual Insurance Company, S.I.'s Motion for Summary Judgment (Doc. 47) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs Robert Newbern and Patricia Newbern's Cross Motion for Summary Judgment (Doc. 49) is **DENIED.**

The Court will issue a separate judgment consistent with this Memorandum and Order

 s/*Abbie Crites-Leoni*
 ABBIE CRITES-LEONI
 UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of July, 2020.

15